IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
INTERNATIONAL UNION OF OPERATING  )
ENGINEERS,                        )
                                  )   2:06-cv-2539-GEB-EFB
              Petitioner,         )
                                  )
     v.                           )   ORDER
                                  )
COUNTY OF PLUMAS,                 )
                                  )
              Respondent.         )
_____)
```

The International Union of Operating Engineers ("Petitioner" or "Union") moves to compel binding arbitration arguing that the County of Plumas ("Respondent" or "County") is required to arbitrate Petitioner's challenge to the County's employee layoff decision because this decision is a pretext to terminate undesirable employees. Petitioner argues this dispute is arbitrable because of an arbitration provision contained in the parties' collective bargaining agreement entitled Memorandum of Understanding ("MOU"). Petitioner also moves to compel advisory (non-binding) arbitration based on a provision of the County's Personnel Rules ("Personnel Rules"). Respondent opposes the motion.

BACKGROUND

On or about August 16, 2005, Respondent sent Petitioner a letter advising it of the possibility of employee lay-offs. (Joint Statement of Facts ("JSF") ¶ 3.) On or about August 30, 2005, the County's Board of Supervisors passed and adopted Resolution No. 05-7192, which contained the County's final budget for fiscal year 2005-2006. (Id. ¶ 4.) Between August 16, 2005 and October 13, 2005, Respondent laid off five Alcohol and Drug Department employees. (Id. ¶ 5.) Respondent contends that the lay-offs were due to County budgetary considerations resulting from inadequate revenue (as set forth in its August 16, 2005 letter) and that this decision is not arbitrable under the MOU. (Id.) On or about October 13, 2005, Petitioner filed a grievance with Respondent in which it argues that the real reason for the lay-offs was to eliminate less than desirable employees and not due to inadequate County revenue. (Id. ¶ 6.) On or about December 30, 2005, Petitioner requested a list of arbitrators from the California State Mediation and Conciliation Service. (Id. ¶ 7.) On or about June 19, 2006, Respondent informed Petitioner that it would not agree to arbitrate this dispute. (Id. ¶ 14.)

DISCUSSION

Under the Federal Arbitration Act, "[a] party aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" AT& T Tech., Inc. v. Communications Workers of America, 475

U.S. 643, 648 (1986) (internal citation omitted).  "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."  Id. at 649.  "An arbitration clause in a collective bargaining agreement creates a presumption of arbitrability."  <u>Contra Costa Legal Assistance Workers v. Contra Costa Legal Services</u>, 878 F.2d 329, 330 (9th Cir. 1989).  This means "that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'"  <u>AT& T Tech., Inc.</u>, 475 U.S. at 650.  "Because of the presumption favoring arbitration, the party opposing arbitration bears the burden of establishing by 'positive assurance' that the arbitration clause is not susceptible to an interpretation that would cover the dispute."  <u>Cal. Nurses Ass'n v. Alta Bates Medical Center</u>, 1995 WL 420774, 149 L.R.R.M. (BNA) 2773 (N.D. Cal. July 16, 1995) (citing <u>United Food and Commercial Workers Union, Local 770 v. Geldin Meat Co.</u>, 13 F.3d 1365, 1368 (9th Cir. 1994)).

<u>I. Binding Arbitration</u>

Section 6.02 of the parties' MOU contains a grievance procedure with a provision for binding arbitration (entitled "Appeal Policy").  It provides, in part, that "[t]he County hereby establishes a personnel action appeals procedure in order to have an impartial hearing on disputed personnel actions which have been appealed on the basis of . . . [Personnel Rule] 16.02 (Disciplinary Action)[]."  (JPS, Ex. A at 25-26.)  Rule 16 prescribes that "[a] permanent employee shall not be dismissed, demoted, or suspended without pay unless the

1 appointing authority serves the employer with a 'notice of intended
2 disciplinary action' at least seven (7) working days before the action
3 is taken." (JPS, Ex. B at 35.)

### A. The Sufficiency of the Allegation

Petitioner contends that Respondent violated Rule 16 of the Personnel Rules when it laid-off employees and therefore it is required to submit to binding arbitration under the MOU. (Memorandum in Supp. of Petition to Compel Arb. ("Mem.") at 1:28, 2:1.) Respondent counters that the Petition "does not specifically allege that the County's layoff of County employees was a 'disciplinary action' under Section 16 of the Personnel Rules [and] [t]he Union attempts to reframe its grievance . . . in its moving papers in support of its Petition." (Opp'n at 6:20-23.) Petitioner rejoins that "Respondent provides no authority why this issue would make the Petition incomplete" and Petitioner's initial grievance alleged that "the 'layoffs' were motivated to eliminate less than desirable employees rather than due to inadequate County revenue." (Reply at 2:28, 3:1-3.) Petitioner also contends that "[t]he grievance indicated the 'layoffs' were in violation of the [MOU] and the [Personnel Rules] [, and] that Petitioner pled Section 6.02 of the MOU that requires arbitration." (Id. at 3:3-7.)

Petitioner's grievance letter provides that "[i]t is the Union's position that the lay-offs were not the result of inadequate revenue sources, but orchestrated to eliminate some employees who are deemed less desirable." (JPS, Ex. E.) The letter also states that the Union "is advancing this grievance pursuant but not limited to the [MOU] and the [] Personnel Rules . . . ." (Id.) Respondent has not

4

shown that the allegations in this grievance letter are insufficiently pled.

B. The Arbitrability of the Dispute

Respondent also argues that "the County is not required to submit the issue of the layoff of County employees to binding arbitration" because the subject of layoffs is neither within the scope of the MOU nor the Personnel Rules that are subject to binding arbitration. (Opp'n at 7:13-14, 8:7-11.) Respondent further contends that "[b]inding arbitration should not be compelled here because the [MOU] specifically reserves [to the County] the right to decrease its workforce." (Id. at 8:20-21.) Petitioner counters that "the separation from employment was a termination labeled [by the County] as a '[l]ayoff'" and therefore Respondent is in violation of Rule 16 of the Personnel Rules, which is subject to arbitration under Section 6.02. (Reply at 3:19-20.) At oral argument, the parties agreed that the decision on whether the employment separation at issue is a layoff or an arbitrable termination should be resolved by interpretation of the MOU and Personnel Rules.

An employee termination under Rule 16 of the Personnel Rules is subject to binding arbitration under Section 6.02 of the MOU. (JPS, Ex. A at 25-26, Ex. B at 35.) Section 1.02 of the MOU specifically exempts from arbitration the County's layoff decisions.[1]

---

[1] Section 1.02 of the MOU provides, in relevant part:

County retains, solely and exclusively, all the rights, powers and authority exercised or held prior to the execution of this Agreement, except as expressly limited by a specific provision of this Agreement. Without limiting the generality of the foregoing, the rights, powers, and authority retained solely and exclusively by County and not abridged herein, include, but are not limited to, the following: To manage and direct
(continued...)

5

However, the MOU does not address the arbitrability of Petitioner's contention that the layoff decision was a pretext to justify the terminations of the employees. (Opp'n at 8:20-21; JPS, Ex. A at 5.) Thus the issue is whether Respondent has met its "burden of establishing by 'positive assurance' that the arbitration clause [and the relevant provisions of the MOU and Personnel Rules are] not susceptible to an interpretation that would cover the dispute." California Nurses Ass'n, 1995 WL 420774. Respondent has not satisfied this burden. Therefore, the parties are required to submit this matter to binding arbitration.

II. Advisory Arbitration

Petitioner also argues that Respondent should be mandated to participate in advisory arbitration because its layoffs violated the layoff policy in Rule 14 of the Personnel Rules. (Mem. at 7:19-21, 26.) Respondent counters that "[t]he Personnel Rules do not provide for an advisory arbitration over the layoff of employees due to inadequate County revenue under [Rule] 14" and therefore "[t]he Union's request for mandamus compelling this process shall be denied." (Opp'n at 10:11-14.)

Rule 18 of the Personnel Rules provides, in relevant part, for advisory arbitration "on disputed personnel actions which have been appealed on the basis of [Personnel Rule] 17.04 (Grievance)." (JPS, Ex. B at 41.) Under Rule 17.04, "[a] grievance is a written

---

[1](...continued)
its business and personnel; . . . to create, change, combine or abolish jobs, departments and facilities in whole or in part; to direct the work force; to increase or decrease the work force and determine the number of employees needed; to hire, transfer, promote, layoff, and maintain the discipline and efficiency of its employees . . . . (JPS, Ex. A, at 5.)

6

1 objection to a managerial act or omission that allegedly affects
2 adversely or unfairly an employee's wages, hours, or other terms and
3 conditions of employment, and for which the County has provided no
4 other procedure for administrative relief." (Id. at 38.) Further,
5 Rule 17.04 prescribes that "[t]he subject matter of a grievance may
6 include . . . [v]iolation of an MOU or these Rules by an officer or
7 employee." (Id.) Petitioner contends Respondent violated the layoff
8 policy established in Rule 14 of the Personnel Rules. (Reply at 5:1-
9 2.) A violation of Rule 14 is "the subject matter of a grievance"
10 under Rule 17.04 since it is a "violation of [the Personnel] Rules."
11 (JPS, Ex. B at 41.) Respondent has not satisfied its burden of
12 showing it is not required to participate in advisory arbitration.
13 Therefore, the Union's request for mandamus compelling advisory
14 arbitration on this issue is granted.

III. Attorney Fees

16     Petitioner argues that it is entitled to attorney fees
17 because "Respondent has no basis for refusing to arbitrate the
18 underlying grievance" and therefore "has acted in bad faith." (Mem.
19 at 8:19, 21.) Respondent counters, *inter alia*, that "[t]here is no
20 evidence of bad faith on the part of the County." (Opp'n at 10:19-
21 20.) An "award of [attorney] fees is appropriate when a party
22 frivolously or in bad faith refuses to submit a dispute to
23 arbitration." United Food & Commercial Workers Union v. Alpha Beta
24 Co., 736 F.2d 1371, 1383 (9th Cir. 1983). Petitioner has not shown
25 that Respondent was frivolous or acted in bad faith when refusing to
26 submit to arbitration. Therefore, Petitioner's request for attorney
27 fees is denied.

CONCLUSION

For the reasons stated, the Union's Petition to Compel Arbitration is granted.

Dated:  May 2, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge